UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VIRGIE L. GRANT-BROOKS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 19-cv-1654 (TSC) |
| STEVEN T. MNUCHIN,<br>Secretary of the Treasury, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Before the court is Defendant's Motion for Summary Judgment, ECF No. 8, and Plaintiff's Evidentiary Objection, ECF No. 14, which the court construes as a Motion to Strike, as well as the parties' supplemental briefs, ECF Nos. 19–21. For the reasons set forth below, the court will GRANT Defendant's motion and OVERRULE Plaintiff's evidentiary challenge.

**I.   BACKGROUND**

*Pro se* Plaintiff Virgie Grant-Brooks, who is African American, has sued the U.S. Treasury Department's Office of the Comptroller of the Currency (OCC) and Stephen A. Lybarger, OCC Deputy Comptroller of Licensing, alleging that the OCC discriminated against her based on race, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*,[1] by treating her less favorably than persons outside her protected class with respect to pay, promotion, training, discipline, and termination. Compl. at 1, 3, 9. She also brings retaliation and hostile work environment claims. Compl. at 8–9.

---

[1] Grant-Brooks also alleges violations of 42 U.S.C. § 1981, Compl. at 1, but the court will dismiss this claim because Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. GSA*, 425 U.S. 820, 835 (1976); *see also Ali v. McCarthy*, 179 F. Supp. 3d 54, 60 n.1 (D.D.C. 2016).

Plaintiff was employed by the Treasury Department for fifteen years. Prior to 2011 she was employed in the Office of Thrift Supervision, during which time she claims that she received "the highest possible performance ratings." Compl. at 4. After Congress enacted the Dodd-Frank Wall Street Reform Act, however, the agency apparently went through a restructuring that resulted in the transfer of all Office of Thrift Supervision employees to the OCC, where Plaintiff claims her duties changed. Defs. Ex. 8 at 14; Compl. at 4, 6. She alleges the OCC assigned her unfamiliar duties and, unlike the manner in which the agency treated similarly situated white male employees, the agency disciplined her more harshly and denied her requests for training and mentorship. Compl. at 4, 6–7.

During her employment, Plaintiff was a member of the National Treasury Employees Union (NTEU) and subject to a collective bargaining agreement (CBA) with the OCC. Compl. at 4; Defs. Statement of Undisputed Facts ("SOF") ¶ 2.[2] Article 23, Section 5 of Plaintiff's CBA provides that "[p]ursuant to 5 USC 7121(d), a complaint involving a claim of discrimination based upon race, color, religion, gender, national origin, age (40+), or disability may, at the discretion of the employee, be raised under either the Employer's EEO administrative complaint process or through the negotiated grievance procedure, but not both." Defs. Ex. 1 (emphasis added).

---

[2] The court warned Plaintiff of the consequences of failing to respond to the OCC's Statement of Undisputed Facts (SOF). ECF Nos. 13, 18. The court also warned Plaintiff that she must support her factual allegations with citations to the record. ECF Nos. 13, 18. Plaintiff failed to heed either warning in her original opposition brief, ECF No. 14, and in her supplemental opposition, simply reiterated her evidentiary challenge, ECF No. 20 at 4. Therefore, the court will treat the OCC's SOF as conceded, except to the extent Plaintiff's brief points to portions of the record showing that the asserted fact is disputed. *See* Local Civil Rule 7(h)(1) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

On January 15, 2013, Plaintiff elected to pursue the negotiated grievance procedure when the NTEU Chapter 302 President filed a "step-one" grievance on Plaintiff's behalf. Defs. Exs. 1, 2. On the grievance form, Plaintiff complained about her December 2012 Performance evaluation, alleging she was "not provided the same training structure, opportunity or grace periods afforded similarly situated" employees during the year prior to the evaluation. Defs. Ex. 2. Plaintiff alleged a "violation of D-F, OCC Policies and Procedures and Title VII" as the legal basis for her claims and requested, as a remedy, "Transfer to Dallas Licensing or detail to afford training opportunity." *Id*.

Several months later, on April 4, 2013, Plaintiff received a Notice of Opportunity to Improve Performance, giving her 90 days to correct certain alleged performance deficiencies. SOF ¶ 7; Defs. Ex. 3.

The OCC subsequently denied the grievance on July 17, 2013. Defs. Ex. 2. The OCC found, among other things, that Plaintiff had participated in a three-day training—as had her co-workers—and that beyond such training, performing her assigned duties with the assistance of any OCC mentors had afforded Plaintiff the best opportunity to become proficient in her position. *Id*. at 1–2. The OCC noted that no other former OTS staff had rotated to an outside office for training. *Id*. at 2. Consequently, OCC concluded that it had treated Plaintiff the same as similarly situated employees and therefore denied her request to transfer to Dallas or for an assignment to a detail for training. *Id*. The OCC decision explained that Plaintiff could appeal the decision by filing a "step-two grievance," with the Deputy Comptroller within ten working days after she received the decision, in accordance with Article 27 of her CBA. *Id*. Two days later the NTEU filed a "step-two" grievance on her behalf regarding the 2012 performance evaluation. Suppl. SOF ¶ 1. The OCC did not issue a response and therefore, under the terms of her CBA, Plaintiff could proceed to arbitration. *Id*. ¶ 3.

3

Approximately one week later, on July 25, 2013, the OCC issued Plaintiff a Notice of Proposed Removal for unacceptable performance. Defs. Ex. 4. The notice explained that Plaintiff could respond orally and/or in writing. *Id*. at 5. Plaintiff elected to respond orally. SOF ¶ 9; *see* Defs. Ex. 6.

Plaintiff subsequently contacted the OCC's Equal Employment Opportunity (EEO) office, on August 5, 2013, for counseling regarding the proposed removal notice, contending, among other things, that the agency's allegedly discriminatory denial of training and mentoring led to her proposed removal. Defs. Ex. 10.

Several months later, on October 7, 2013 the OCC notified Plaintiff that it was removing her from her position for unacceptable job performance. Defs. Ex. 5 at 1. The notice explained that she had the right to contest the decision by: 1) appealing to the Merit Systems Protection Board, 2) engaging in arbitration invoked by the NTEU, 3) filing an Equal Employment Opportunity complaint, or (4) seeking corrective action with the Office of Special Counsel if she believed the proposed removal was in reprisal for whistle-blowing activity. *Id*. at 2. The notice warned Plaintiff:

> You may select only one of these procedures. Your election of a procedure will be determined based on the first-received timely filing under one of these procedures. Electing to file under one procedure waives your right to file under the others, except as noted. The instructions for filing an appeal, invoking arbitration, filing a complaint, or seeking corrective action for whistleblowing activity follow below.

*Id*. (emphasis added). On October 17, 2013, the Union sent a letter on Plaintiff's behalf to the OCC invoking the arbitration option to challenge the removal. SOF ¶ 12; Defs. Ex. 6.

4

The following day, Plaintiff began completing a formal EEO complaint, but she did not file it until several weeks later, on November 2, 2013.[3] See SOF ¶ 24; Defs. Ex. 11. On the EEO complaint form, Plaintiff stated that she first became aware of the alleged discrimination on or around October 1, 2012. Defs. Ex. 11 at 3. She complained of an "ongoing denial of appropriate training," as well as the "loss of a 17 year career," and she requested as remedies "remove adverse ratings; restitution – remuneration of lost wages." Id. In response to the question of whether she had filed a grievance "[o]n this same matter," Plaintiff checked the box for "agency grievance procedure," and explained that a "specific grievance was filed for 2012 performance evaluation rating on the basis that no training was provided." Id.

An arbitration hearing on both the performance evaluation and removal grievances was held on March 10, 2014. SOF ¶ 12; Defs. Exs. 7, 8; Supp. SOF ¶¶ 4–7; Defs. Ex. 20, Hr'g Tr. at 6–7, 42–44, 52–57, 172–175. The parties stipulated that the two issues to be considered were whether the OCC failed to 1) sufficiently communicate the minimum level of performance required to avoid removal, and 2) provide Plaintiff with a reasonable opportunity to improve her performance. Defs. Ex. 8 at 11; Defs. Ex. 6, Hr'g Tr. at 7–8. During the hearing, Plaintiff also argued that the agency failed to provide her with sufficient training to perform her job duties. See Defs. Ex. 7, Hr'g Tr. at 20–21, 226–29. She did not raise any discrimination claims. Supp. SOF ¶ 10; see Defs. Ex. 8.

On June 2, 2014, the arbitrator issued a written decision addressing both grievances. Defs. Ex. 8 at 1. The decision included discussion and analysis of: 1) the events leading up to the 2012 Performance Evaluation, as well as the subsequent grievance; 2) the events leading up

---

[3] OCC claims Plaintiff filed her EEO complaint on 11-2-13. SOF ¶ 24. The complaint lists "10-18-13" as the "filing date," but next to that date "11-2-13" appears in the margin. The fax line on the document and the agency's date stamp also show 11-2-13. In light of this evidence and Plaintiff's failure to respond to the OCC's statement of undisputed facts, the court finds that the 11-2-13 date is undisputed.

to the removal; 3) whether formal training was provided versus on-the job training throughout Plaintiff's employment at the OCC; 4) the availability of mentoring; and 5) the two stipulated issues: sufficiency of the OCC's communication regarding performance expectations, and the OCC's alleged failure to provide a reasonable opportunity to improve performance. Defs. Ex. 8. The arbitrator denied the grievance. *Id*. at 20.

Pursuant to Article 28, Section 7 of the CBA, the arbitrator's decision was considered "final and binding," but Plaintiff could have filed "an exception" with the Federal Relations Labor Authority in accordance with OCC regulations. SOF ¶¶ 16–18; Defs. Ex. 1. Plaintiff had thirty days after the decision service date to file an exception but did not do so. SOF ¶¶ 19–20; 5 C.F.R. § 2425.2(b). Instead, she appealed to the Merit Systems Protection Board (MSPB). SOF ¶ 21; Defs. Ex. 9.

The MSPB denied her appeal, concluding, among other things, that it lacked jurisdiction over her request for review of the arbitration decision because its authority over claims involving discrimination is limited. SOF ¶ 22; Defs. Ex. 9. The MSPB may review decisions involving discrimination claims: 1) if the claimant raised them in connection with a grievance, or 2) if the claimant is raising them for the first time before the MSPB because they could not have been raised during the grievance process. Defs. Ex. 9 at 3. During its proceedings, the MSPB issued a Show Cause Order explaining Plaintiff's jurisdictional burden and directing her to file evidence and argument on whether she had raised a claim of discrimination with the arbitrator. Defs. Ex. 9 at 3-4. After Plaintiff responded that she had not raised the discrimination claim during arbitration, the Board rejected her argument that she had been unable do to so and found she had not met her jurisdictional burden to proceed before the Board. *Id*. at 4-5.

Subsequently, after an EEO investigation, an EEOC administrative judge rejected Plaintiff's discrimination claim. SOF ¶ 31; Defs. Exs. 14–15. Plaintiff pursued various levels of review but was unsuccessful in having the decision overturned. Defs. Ex. 16–18.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Courts must construe *pro se* filings liberally." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (italics added) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers")). However, as the non-moving party, a *pro se* plaintiff "is required to provide evidence that would permit a reasonable jury to find in his favor." *Prunte*, 699 F. Supp. 2d at 22 (internal quotations omitted) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987)).

## III.   ANALYSIS

1. <u>Claims Against Stephen A. Lybarger</u>

The OCC moves to dismiss Stephen A. Lybarger as a defendant because there is no evidence that Plaintiff served him, and the only proper defendant in a Title VII case against a federal entity is the agency itself. For good cause shown, the claims against Lybarger will be dismissed with prejudice. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (affirming District Court's dismissal of claims against supervisor named as a Title VII defendant).

7

2. <u>Claims Against OCC</u>

OCC argues that it is entitled to summary judgment because Plaintiff failed to exhaust her administrative remedies, which is a prerequisite for bringing a Title VII claim. *See, e.g.*, *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). "Whether a plaintiff in a Title VII case has timely exhausted administrative remedies is not a jurisdictional requirement, but is an affirmative defense that the defendant bears the burden of proving by a preponderance of the evidence." *Tapp v. Wash. Metro. Area Transit Auth.*, 283 F. Supp. 3d 1, 5 (D.D.C. 2017).

As an OCC employee, Plaintiff was covered by the Civil Service Reform Act (CSRA) and by the terms of her union's CBA, the latter of which permits employees to file grievances. *See Carter v. Carson,* 241 F. Supp. 3d 191, 198 (D.D.C. 2017), *aff'd*, 715 F. App'x 16 (D.C. Cir. 2018); *see* Defs. Ex. 1, Article 23, § 5. Those grievances may include claims of discrimination. Defs. Ex. 1, Article 23, § 5. In discrimination cases, 5 U.S.C. § 7121(d) of the CSRA "provides, *inter alia,* that '[a]n aggrieved employee affected by a prohibited personnel practice [including a violation of Title VII] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.'" *Carter,* 241 F. Supp. 3d at 198 (citations omitted). Employees are deemed "to have made [their] selection upon either filing an administrative complaint or filing a grievance, and that election is irrevocable." *Id.* Consequently, although the employee may technically "file a grievance with her union and also file an EEO complaint, as she did here, she could not expect to successfully pursue both remedies." *Id*.

The grievance procedure "begins with a complaint and proceeds to an arbitrator's decision," which the employee may appeal by filing an "exception" with the Federal Labor Relations Authority. *Davis v. Yellen*, No. 08-CV-447 (KBJ), 2021 WL 2566763, at *22 (D.D.C. June 22, 2021) (citing 5 C.F.R. §§ 2420.1(h), 2425.2(a)); *see* Defs. Ex. 1, Article 28 § 7. After

filing an exception, the employee must overcome several additional procedural hurdles, not relevant here, before bringing a Title VII action in a federal district court. *See Davis*, 2021 WL 2566763, at *22.

Because Article 23, Section 5 of Plaintiff's CBA allowed her to raise discrimination claims during the grievance process, she was obligated to pursue those claims using that process or the EEO process, but not both. She irrevocably elected the grievance process in January 2013 by filing the first grievance challenging her 2012 Performance review and alleging deficient training. *See* Defs. Ex. 1; *Carter,* 241 F. Supp. 3d at 198 (An "election to proceed under a negotiated procedure is indicating by the filing of a timely written grievance."); 29 C.F.R. § 1614.301(a). In that grievance, Plaintiff specifically alleged discrimination and therefore was prohibited from raising the same claims in a subsequent EEO complaint. *See* Defs. Ex. 1. Moreover, Plaintiff failed to pursue those claims during arbitration, Supp. SOF ¶ 10; *see* Defs. Ex. 8, and therefore did not exhaust them. *Davis*, 2021 WL 2566763, at *23.

Plaintiff again elected the grievance process on October 7, 2013, when her union representative sent a letter to the OCC challenging her removal. Defs. Ex. 6. During that process and the later arbitration, even though her CBA allowed her to do so, Plaintiff did not raise discrimination claims associated with her removal and the alleged lack of training that led to her removal. Ex. 9, MSPB Decision at 4; Plaintiff's Resp. at 11. Consequently, she did not exhaust her discrimination claims and cannot pursue them here. *See Davis*, 2021 WL 2566763, at *22–23; *Carter*, 241 F. Supp. 3d at 198 ("A plaintiff fails to exhaust her administrative remedies when the complaint she files in federal court includes a claim that was not raised in the administrative" proceedings.).

The fact that Plaintiff filed an EEO charge <u>after</u> pursuing both grievances does not change the outcome. By filing both grievances before filing her EEO charge, pursuant to both

9

the CSRA and her CBA, "she could not expect to successfully pursue both remedies." *Carter,* 241 F. Supp. 3d at 198.

Citing *Loe v. Heckler*, 768 F.2d 409, 420 (D.C. Cir. 1985), *Klein v. Derwinski*, 869 F. Supp. 4, 6 (D.D.C. 1994) and *Webb v. D.C.*, 864 F. Supp. 175, 183 (D.D.C. 1994), Plaintiff argues that filing an EEO charge was the only prerequisite to this lawsuit. But neither *Loe* or *Klein* involved a plaintiff bound by a CBA and the CSRA. And although the Plaintiff in *Webb* was bound by a CBA, the issues before the court did not involve the CSRA's exhaustion requirements as they relate to cases like this one, where Plaintiff first invoked the arbitration process to challenge her performance evaluation and her removal. Plaintiff's legal authority therefore fails to support her position.

Indeed, in *Carter,* the court rejected the same argument Plaintiff makes here. 241 F. Supp. 3d. at 198–99. Like the plaintiff in *Carter*, Plaintiff argues that the fact that she did not raise her discrimination during the CBA process meant that the "grievance procedure did not bar [her] from later filing an EEO complaint." *Id*. at 198. But the District Court in *Carter* rejected this argument, noting that that argument was foreclosed by the CSRA, 5 U.S.C. § 7121(d), which "prevents a party from raising the same 'matter' in both a union grievance and an EEO complaint, and courts have tended to construe the term 'matter' to encompass more than a legal claim and instead to encompass the 'underlying action,' or the 'topics' raised." *Id.* at 199 (citing *Guerra v. Cuomo,* 176 F.3d 547, 550 (D.C. Cir. 1999)) (cleaned up).

Here, as in *Carter*, Plaintiff's grievances and subsequent EEOC charge involved the same "matter." The D.C. Circuit has explained that "whether a union grievance and an EEO complaint concern the same 'matter' under § 7121(d) does not depend upon 'the legal status of the act complained of' or upon 'legal jargon.'" *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999) (citations omitted). Plaintiff may have used different terminology to describe the claims in her

10

grievances and her EEO charge, but they all involved the same "underlying action," or 'topics' raised." *Id*. Plaintiff filed the first grievance over her performance evaluation and training, then later filed a second grievance over training and the removal. Similarly, in the EEO charge, Plaintiff complained about the "loss of 17 year career" and "ongoing denial of appropriate training." Defs. Ex. 11.

Moreover, the fact that Plaintiff first sought EEO counseling before filing her grievance over her removal is of no moment. "Under EEOC regulations, the employee is not deemed to have chosen the statutory [EEOC] path until he files the formal complaint," which Plaintiff did not do until weeks after she filed the grievance. *Johnson v. Peterson*, 996 F.2d 397, 399 (D.C. Cir. 1993) (citing 29 C.F.R. § 1613.219). Having found no evidence that Plaintiff exhausted her administrative remedies, the court will grant the OCC's motion for summary judgment.[4]

The court had directed the parties to file supplemental briefing on whether Plaintiff had exhausted her remedies with respect to her first grievance regarding her performance evaluation. ECF No. 18. In her supplemental briefing, Plaintiff did not address this issue. Instead, she argued the merits of her claim and raised two additional issues. First, she challenged the manner in which the OCC handled certain aspects of the grievance process—*i.e.*, it allegedly failed to file a response to one of the grievances and took six months to respond to another. ECF No. 18, Pls. Supp. Opp. at 2–3. These complaints, however, do not excuse Plaintiff's failure to raise her discrimination claims during the arbitration proceedings. Moreover, it is unclear how Plaintiff suffered a cognizable Title VII injury because the OCC responded late to one grievance and not at all to the other.

---

[4] Plaintiff's retaliation, hostile work environment, pay and failure to promote claims fail because there is no evidence that she raised them in any administrative or grievance proceeding.

Second, Plaintiff challenges the OCC's reliance on excerpts from the arbitration hearing transcript, claiming that OCC's evidentiary submission is incomplete because it does not contain her NTEU attorney's opening statement. Pls. Supp. Opp. at 3. Plaintiff attached the opening statement excerpt to her Supplemental Opposition, *id*. at Ex. 5, and the court has reviewed it, but this evidence does not change its analysis. Plaintiff's NTEU attorney did not mention or even suggest that Plaintiff was pursuing a Title VII discrimination claim during the arbitration proceedings. Instead, her attorney raised the same issues to which the parties had stipulated: whether the OCC sufficiently communicated the minimum level of performance required to avoid removal, and whether the OCC provided Plaintiff with a reasonable opportunity to improve her performance. Pls. Supp. Opp. at Ex. 5, Hr'g Tr. at 19–21.

3. Plaintiff's Objection to Evidence

Plaintiff next asks the court to strike the declaration of Christopher Sterbenz, counsel to the OCC and the official whose testimony supports the agency's Statement of Undisputed Facts. *See* Pls. Opp.; ECF No. 14-1, Pls. Evid. Objections; ECF Nos. 8-1, 8-2; Pls. Supp. Opp. at 3; ECF 19-2. Plaintiff contends that the declaration is not based on personal knowledge, is incomplete, and is unsupported by facts because Sterbenz does not have first-hand knowledge of her "15-year work or performance with the U.S. Department of Treasury," and did not participate in the arbitration hearing. Pls. Evid. Objections at 13; Pls. Supp. Opp. at 3.

Plaintiff's argument is without merit, as the Sterbenz declaration is supported by OCC records, all of which are attached as exhibits to the agency's brief. *See* ECF Nos. 8-1, 8-2. Moreover, if the defendant presents evidence that a Plaintiff failed to exhaust her claims, such as through "a declaration by a person with personal knowledge that the relevant files do not contain records of a grievance or complaint, vague assertions without supporting details that the plaintiff exhausted a claim will not create genuine issue of fact." *Davis*, 2021 WL 2566763, at *22.

4. <u>Plaintiff's Request for Discovery</u>

Finally, Plaintiff asks that the court allow her to take discovery before ruling on the OCC's dispositive motion. But Plaintiff does not indicate how discovery might change the outcome of this litigation. *See Bain v. MJJ Prods., Inc.*, 751 F.3d 642, 648 (D.C. Cir. 2014) ("Under Rule 56(d), a court *may* deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion *adequately explains* why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion.") (citations omitted and cleaned up). Accordingly, the court will overrule Plaintiff's objection.

### IV. CONCLUSION

For the reasons set forth above, the court will GRANT the OCC's motion for summary judgment and OVERRULE Plaintiff's objection.

Date: March 31, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge